[Civ. No. 9655.   First Appellate District, Division Two.—May 3, 1935.]

FRANCESCA   HALLA,   Appellant,   v.   BANK   OF
    AMERICA   NATIONAL   TRUST   AND   SAVINGS
    ASSOCIATION   (a   Corporation),   as   Executor,   etc.,
    et al., Respondents.

R. L. Chamberlain and H. H. Linney for Appellant.

W. Urie Walsh and Herbert C. Kaufman for Respondent Bank.

Richard Pausch and Theodore Tamba for Respondent Casualty Company.

STURTEVANT, J.—The plaintiff commenced an action to recover a judgment for money. She named as defendants Bank of America National Trust and Savings Association and Commercial Casualty Insurance Company. On the trial before the court sitting without a jury, after all of the evidence had been received and both parties had rested, the trial court granted motions for a nonsuit in favor of Bank of America National Trust and Savings Association, and also ordered judgment in favor of Commercial Casualty Insurance Company. The plaintiff made a motion for a new trial. Her motion was denied and she has appealed. In her complaint she alleged that she is a citizen of San Francisco; that the Bank of America National Trust and Savings Association is a corporation and is the executor of the last will and testament of A. Porta, deceased; that the Commercial Casualty Insurance Company is a corporation; that on the second day of January, 1932, there was issued to A. Porta a license to act as a real estate broker in the name of Progressive Realty Company, and as a condition A. Porta was required to file and did file with the commissioner of real estate a bond in the sum of $2,000 executed by the Commercial Casualty Insurance Company and conditioned as required by law; that the contents of the bond were as stated in the document pleaded *in haec verba* in the plaintiff's complaint; that on the eighth day of February, 1932, " . . . plaintiff employed" said A. Porta as a real estate agent to purchase for her certain real estate (not describing it) in San Francisco and paid to him $3,000 to enable him to make the purchase; that A. Porta did not make the purchase but converted the $3,000 to his own use; and that on the tenth day of February, 1933, plaintiff filed with the executor her claim for $3,000 which it has not allowed. The claim is not set forth in the com-

plaint but the answers admitted the filing thereof. As to what may be the contents the court is not advised.

We will first consider the case as made against the defendant bank. As from the beginning both counsel agreed that as to the bank the plaintiff was not entitled to testify regarding any matter or fact occurring before the death of the deceased. Four documents which indicate the payment of moneys were produced from the possession of the plaintiff and introduced. Taking up each chronologically, plaintiff's exhibit No. 3 is a statement reciting disbursements by the decedent down to April 9, 1930, which amount to $210.44. He charges himself with "interest on $2,000 at 7% from October 1, 1929 to April 1, 1930", in the sum of $70, which left a balance due plaintiff of $140.44. He then wrote an addendum, "Received from Miss F. Halla $140.50 as payment on house." No evidence was introduced showing what house. Plaintiff's exhibit No. 4 is of like tenor. It shows payments by deceased of $152.19. In an addendum thereto he charged himself with "interest $35 from April 1 to July 1, 1930", and wrote a self-serving declaration, "Bal. due Progressive $117.19." On the main document he wrote, "Paid August 12, 1930." Plaintiff's exhibit No. 5 is dated August 7, 1931. It shows a purchase or sale of $7,900. From its face it may be inferred it was a purchase of real estate bought subject to existing bank mortgage, and that $1,500 was paid. But by whom, plaintiff directly or by deceased for plaintiff's account? The record shows nothing to answer the question. On its face it acknowledges the receipt of $100 for expenses, but it enumerates expenses aggregating $103.10, bank interest $15, and shows a balance due Progressive Realty Co. of $18.10. Then to that instrument there is an addendum, "Applied July 30 interest $35.00"; he subtracts $18.10; and the balance is $16.90. He writes, "Paid in full, A. Porta." Paid by whom, himself or the plaintiff? The record does not show. If the interest mentioned was his interest payable to the plaintiff, the balance was properly struck but as a receipt the document should have been signed by the plaintiff. If the interest was due decedent he should have added instead of subtracting and the paper should have been signed by decedent. Finally, plaintiff's exhibit No. 2 is: "Received

from Mrs. Francesca Halla on March 22nd, 1929, $2000.00. Received on February 8th, 1932 from Mrs. Halla $1000.00. A. Porta.'' There is evidence in the record tending to show the purchase by the decedent for the plaintiff's account of two or more different pieces of real estate and of the sale of at least one piece for her account, but the record does not give the facts nor dates of any one of the transactions. Mr. Ferrera became an employee of the decedent in 1930. He testified he knew the facts regarding the plaintiff's purchase through the decedent of the property at 1306 York Street, but he was not asked to state the facts. Plaintiff's exhibit 5 is dated August 7, 1931. It shows the purchase or sale of property the price of which was $7,900. It contains a detailed list of the expenses. As the purchaser usually pays such expenses we assume the transaction was a purchase. The record does not contain any evidence giving any description of the property involved. The Rhode Island Street property was sold. When and for how much the record is silent. At least one transaction, according to the exhibits, was conducted through a title company, but no representative of any title company was called as a witness. All deeds were presumptively placed of record, but such facts were not introduced in evidence. The record also discloses that from May 1, 1930, the plaintiff was indebted to the Hibernia Savings and Loan Society on a note bearing interest at $29.33 per month and that the decedent had charge of the making and did make the payments. However, no representative of the bank was called as a witness and the record does not disclose what payments, if any, were made after August 7, 1930. It will be presumed that the evidence on these outstanding factors which we have just enumerated would have been against the plaintiff (Code Civ. Proc., sec. 1963, subd. 6) if it had been introduced. Mr. Bruzza, the owner of the property at 847 Alabama Street, testified that the day before the death of the decedent the latter called on him, asked his price, and stated that decedent made the remark that he had a client who had already given him money to buy the property—two or three thousand dollars—and that she had no more money. No name was mentioned. The witness had never seen the plaintiff. He had heard a woman had called and examined

the property. No contract was made, but Porta said he would return the next day. He died that night. The bank called as a witness an expert who testified that he had examined the books and papers of the deceased for the purpose of ascertaining how the account stood between the plaintiff and the deceased. Among other things, he testified regarding the purchase of another piece of property, 1372 Rhode Island Street, for the plaintiff. The record showed that the price was $5,400; that a mortgage in the sum of $3,000 was assumed, leaving a balance of $2,400. On that balance $2,000 was paid as a deposit and a check for $400. The record does not show who made the payments. The witness was unable to give the date. The same witness testified that the last named property was later sold and on February 10, 1931, the deceased paid the plaintiff $2,032.94. As we have shown in another place, the record shows that the Rhode Island Street property was bought about July 29, 1929, hence the expert accountant's evidence is not helpful. The same witness testifying regarding the accounts as he found them stated that there would be a balance due the deceased of $403.31. As to this defendant the trial court granted a motion for a nonsuit. ■ In effect the theory of the plaintiff was that in equity and good conscience the decedent, at the time of his death, held $3,000 of her money which he should pay to her. (17 Cal. Jur. 602.) She attempted to prove her case by circumstantial evidence. To do so she was bound to meet the rule that is concisely stated in 10 Cal. Jur. 1157, as follows: "A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such nature, and so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for they may be true and yet they may have no tendency to prove the theory." From the evidence above set forth the trial court could find that on March 22, 1929, the decedent received from the plaintiff $2,000. If that were all the trial court could presume said sum was owing to the decedent. (Code Civ. Proc., sec. 1963, subd. 7.) But the evidence goes further and shows that on February 10, 1931, he paid her $2,033.94. It also

shows he paid her interest to July 30, 1931, in the sum of $35, but on. what sum and for what time does not appear. He received $1,000 from her on February 8, 1932. But in view of the other evidence concerning sales and purchases, receipts and disbursements, it may not be said the only conclusion that can fairly or reasonably be drawn from the facts is that the decedent at the time of his death still held for the plaintiff's account the said sum of $3,000 or any part thereof. As these matters arose on a motion for a nonsuit after all of the evidence had been received, the rule governing the trial court is stated in *Bannister* v. *Los Angeles Ry. Corp.*, 203 Cal. 427, at page 429 [264 Pac. 756]. Giving consideration to the entire record, including the evidence, we cannot say the trial court erred in granting the nonsuit.

■ As to the Commercial Casualty Insurance Company the above evidence is applicable and there is some additional evidence which must be taken into consideration. The term of the bond of the defendant was from January 1, 1932, to December 31, 1932. As to $2,000 of the plaintiff's claim the evidence shows it was paid to the decedent as a loan on March 22, 1929. It is clear the bond did not cover that item. The other item $1,000 was paid February 8, 1932. The defendant asserts it was a personal loan and as such not covered by a bond executed under the California Real Estate Act. (Deering's Gen. Laws, 1931, p. 25, Act 112.) As has been noted above there was evidence that the relation of debtor and creditor existed between the decedent and the plaintiff for several years prior to his death. But the plaintiff testified that when she paid to the decedent $1,000 on February 8, 1932, she directed the decedent to buy her a lot and that the relation of debtor and creditor should cease. However, continuing her testimony she stated she did not designate a lot but proceeded to examine different offerings and it was not until October 29, 1932, that she designated a lot. On that date she selected number 847 Alabama Street and told Porta to buy it. Porta said the price was $3,550. She replied she could only pay $3,000 because it was the only money she had. Porta called on Bruzza, the owner, who held out for $3,500 on the sales price. In talking to Bruzza, Porta said he had a check for $3,300. That was sales talk,

as the statement does not square with any other testimony in the record. There is no evidence that the $1,000 was ever repaid to the plaintiff. That is was a loan by the latter to the decedent is negatived by the plaintiff's testimony which we have quoted. That it was invested by the decedent for the plaintiff as directed is not even claimed. It follows that the judgment in favor of the Commercial Casualty Insurance Company should be reversed.

The judgment in favor of Bank of America National Trust and Savings Association is affirmed, and the judgment in favor of Commercial Casualty Insurance Company is reversed. The plaintiff will have judgment for her costs against the Commercial Casualty Insurance Company. The Bank of America National Trust and Savings Association will have judgment for its costs against the plaintiff.

Nourse, P. J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1935.